[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**AUGUST 29, 2003**
**THOMAS K. KAHN**
**CLERK**

No. 00-14380

D. C. Docket No. 99-00006-CV-JTC-3

JERRY CHARLES VAUGHAN,

Plaintiff-Appellant,

versus

FRED LAWRENCE COX, OFFICER, individually
and in his official capacity as an officer of the
Coweta County Sheriff's Department,
COWETA COUNTY, GEORGIA, et al.,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Northern District of Georgia

———————————————

**(August 29, 2003)**
**ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES**

Before CARNES, COX and NOONAN[*], Circuit Judges.

COX, Circuit Judge:

---

[*]        Honorable John T. Noonan, Jr., United States Circuit Judge for the Ninth Circuit,
sitting by designation.

We grant rehearing sua sponte. In our original opinion, reported at 264 F.3d 1027 (11th Cir. 2001), we concluded that Deputy Fred Lawrence Cox was entitled to summary judgment as to his qualified immunity defense on Jerry Charles Vaughan's 42 U.S.C. § 1983 claims arising out of injuries Vaughan suffered during a police chase. The Supreme Court granted certiorari, *Vaughan v. Cox*, 536 U.S. 953, 122 S. Ct. 2653 (2002), vacated our judgment, and remanded this action for reconsideration in light of the Court's intervening decision in *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508 (2002). Following the filing of supplemental briefs on remand, we reinstated our original decision and provided a supplemental discussion addressing *Hope* in an opinion reported at 316 F.3d 1210 (11th Cir. 2003). We vacate our prior two opinions in this case in their entirety and substitute the following one, in which we conclude, among other things, that Cox is not due summary judgment on the basis of qualified immunity.

## I. BACKGROUND & PROCEDURAL HISTORY

In the early morning of January 5, 1998, the Sheriff's Department of Coweta County, Georgia, received a report that a red pickup truck with a silver tool box in its bed had been stolen from a service station along Interstate 85 south of Atlanta.[1] The

---

[1] Our recitation of the facts is primarily drawn from the depositions that accompanied the Defendants' summary judgment motion and Vaughan's response. To the extent that the material facts are in dispute, we, in our review of the grant of summary judgment in favor of Cox, have

report included the information that the suspect, a white male wearing a white t-shirt, was believed to be heading north on I-85. In response to the report, Deputy Fred Lawrence Cox and Deputy Jeff Looney headed to the northbound lanes of I-85 in separate vehicles. Deputy Looney pulled onto the grass median to observe passing traffic. Deputy Cox continued farther north and stopped at the site of a recent accident. Deputy Looney soon spotted a truck traveling northward that matched the description of the stolen vehicle but, contrary to the report, it was towing a trailer loaded with two personal watercraft. Looney reported his sighting on his radio and began to follow the truck. After hearing Looney's report, Deputy Cox radioed Looney to inform him that there was an accident scene north of Looney's position and that he should not attempt to stop the vehicle until it had passed by the accident.

As the red pickup and Deputy Looney passed him, Deputy Cox pulled out and joined the pursuit. While tracking the truck, the deputies made efforts to determine whether the vehicle was indeed the stolen truck. To this end, Deputy Cox sped up and passed the truck, which was proceeding at or near the speed limit of seventy miles per hour. He observed two men in the cab. The man in the passenger's seat, Jerry Charles Vaughan, matched the description of the suspect. Cox's suspicions

---

resolved those disputes and drawn all reasonable inferences in Vaughan's favor. *Artistic Entertainment, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1203 (11th Cir. 2003).

confirmed, he and Deputy Looney decided to use a "rolling roadblock" to stop the vehicle, which involves officers blocking a suspect vehicle with their police cruisers and reducing their speed, in the hope that the suspect car will slow down as well. Deputy Looney positioned his cruiser directly behind the pickup. Deputy Cox moved in front of the truck. By this point, the deputies had made it clear that they desired to stop the pickup. As soon as he had positioned his vehicle in front of the truck, Cox applied his brakes. The truck rammed into the back of Cox's cruiser. Deputy Cox has testified that the impact caused him to momentarily lose control of his vehicle; Vaughan and the pickup's driver, Freddy Rayson, contend that the impact was both accidental and insufficient to cause Cox to lose control, and for the purposes of this appeal, we accept Vaughan's version of the facts.

After the collision, Rayson did not pull over, but instead accelerated while staying in the same lane of traffic.[2] Deputy Cox decided to reposition his vehicle behind the truck. He unholstered his sidearm and rolled down the passenger side window. Cox testified that he readied himself in this manner in case Rayson made aggressive moves in his direction. Cox then shifted his cruiser one lane to the left and slowed to allow the truck to pass by him. As soon as his cruiser was even with the

---

[2] On cross-examination, Vaughan conceded that Rayson began to drive "recklessly" after the collision with Cox's vehicle. However, Vaughan maintains that although Rayson did accelerate, he did not change lanes or weave in and out of traffic at that time.

pickup, Deputy Cox turned on his rooftop lights. Rayson responded by accelerating to eighty to eighty-five miles per hour in a seventy-miles-per-hour zone. Cox then fired three rounds into the truck without warning. Although Cox testified that he fired because the pickup swerved as if to smash into his cruiser, Vaughan maintains that the truck, while increasing its speed, made no motion in the direction of Cox's vehicle; again, we accept Vaughan's version of the events.

Deputy Cox's plan was to disable either the truck or Rayson so that he could force the truck off the road. However, his volley disabled neither the truck nor Rayson. The third bullet fired from Cox's weapon instead punctured Vaughan's spine, instantly paralyzing him below the chest. Rayson's only reaction to the shooting was to drive faster and more recklessly. Rayson began a desperate break for freedom which involved weaving in and out of lanes, driving at high speeds through exit ramps, and dragging at least one of the watercraft, which had fallen off the trailer, along the ground.

As the chase continued into more heavily congested sections of the highway, Cox made several attempts to stop the vehicle, firing his weapon once more, and repositioning his cruiser in front of the truck. The truck struck Cox's cruiser, causing the cruiser to spin out of control and ram into a steel guard rail. Cox was injured and his cruiser was badly damaged, but the truck continued on, dragging the trailer and

watercraft behind. Finally, when Rayson tried to force the truck between two vehicles, he lost control of the pickup, the trailer jack-knifed, and the truck hit the cement median. Both Vaughan and Rayson were taken to the hospital.

Vaughan filed suit for damages pursuant to 42 U.S.C. § 1983 against three named defendants: Deputy Cox, in both his individual capacity and his official capacity; Coweta County Sheriff Mike Yeager, in his official capacity; and Coweta County, Georgia. In Count I, Vaughan alleges that Deputy Cox used excessive force in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments. In Count II, Vaughan alleges that Sheriff Yeager and Coweta County promulgated and established policies that caused Deputy Cox to employ excessive force in violation of Vaughan's constitutional rights. And in Count III, Vaughan alleges five state law claims (negligence, assault and battery, false arrest, intentional infliction of emotional distress and outrageous conduct) against Cox.

Vaughan, Yeager, and Coweta County (collectively, "the Defendants") moved for summary judgment. In its order regarding the summary judgment motion, the district court initially concluded that Vaughan was not subjected to a "seizure" within the meaning of the Fourth Amendment, reasoning that Deputy Cox aimed his shots at the driver of the truck and the truck itself, but not at Vaughan. The court then went on to conclude that even if Vaughan had been seized, Cox's use of force was

6

objectively reasonable under the circumstances. As a consequence, the court concluded that Deputy Cox was entitled to summary judgment on Vaughan's § 1983 claim predicated on the Fourth Amendment. Having concluded that Cox did not violate Vaughan's constitutional rights, the court granted summary judgment in favor of Sheriff Yeager and Coweta County because Vaughan's claims against these defendants were derivative claims based on Deputy Cox's conduct. The court declined to exercise supplemental jurisdiction over Vaughan's state law claims. Vaughan appeals.

## II. ISSUES ON APPEAL & STANDARD OF REVIEW

On appeal, Vaughan raises three arguments. First, he contends that the district court erred when it concluded that Vaughan was not seized when he was struck by the bullet fired by Cox. Second, he argues that genuine issues of material fact exist as to whether Cox's actions were objectively reasonable, and therefore Cox is not entitled to summary judgment on the basis of qualified immunity. Finally, Vaughan suggests that even if he was not subjected to a "seizure" for Fourth Amendment purposes, he still may maintain a Fourteenth Amendment substantive due process

claim based on his allegation that Cox's conduct "shocks the conscience" and exhibited deliberate indifference.[3]

We review de novo the district court's grant of summary judgment, drawing all reasonable inferences in favor of the nonmoving party, Vaughan. *Artistic Entertainment, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1203 (11th Cir. 2003). In conducting our de novo review, we apply the same familiar standards as the district court to evaluate the Defendants' entitlement to summary judgment. *Hallum v. Provident Life & Acc. Ins. Co.*, 326 F.3d 1374, 1375-76 n.1 (11th Cir. 2003). We will address in turn each of Vaughan's arguments.

## III. DISCUSSION

### A.    Vaughan's Fourth Amendment Claim

#### 1.    *Was Vaughan subjected to a seizure?*

The first step in reviewing an excessive force claim is to determine whether the plaintiff was subjected to the "intentional acquisition of physical control" by a government actor – that is, whether there was a "seizure" within the meaning of the Fourth Amendment. *Brower v. County of Inyo*, 489 U.S. 593, 596, 109 S. Ct. 1378, 1381 (1989). It is clear that "apprehension by the use of deadly force is a seizure."

---

[3]    On appeal, Vaughan does not raise any issues relating to his § 1983 claims based on the Fifth Amendment or the Eighth Amendment.

*Tennessee v. Garner*, 471 U.S. 1, 7, 105 S. Ct. 1694, 1699 (1985). However, the Supreme Court has held that a seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied*." *Brower*, 489 U.S. at 597, 109 S. Ct. at 1381 (emphasis in original). The question remains whether Cox's action in firing his weapon at the truck and its driver can be deemed "means intentionally applied" to seize Vaughan.

The district court concluded, and Deputy Cox contends here, that Vaughan was not seized by the bullet because Cox did not intend to hit Vaughan when he fired his pistol. Instead, Cox planned to seize both Rayson and Vaughan by disabling either the truck or Rayson with a volley of bullets and then ramming the pickup off the road. Cox argues that Vaughan was not seized because Cox, while intending to apprehend Vaughan, did not intend to stop him by shooting him.[4] In Deputy Cox's view, because he did not intend to shoot Vaughan, he contends that Vaughan did not suffer a Fourth Amendment seizure. We disagree.

---

[4] In support of this position, Deputy Cox cites several cases from our sister circuits in which courts rejected Fourth Amendment claims brought by innocent bystanders or hostages accidentally harmed by police fire. *See Rucker v. Harford County*, 946 F.2d 278 (4th Cir. 1991) (bystander not seized by police bullet aimed at fleeing vehicle); *Childress v. City of Arapaho*, 210 F.3d 1154 (10th Cir. 2000) (hostage wounded by police bullet aimed at suspect not seized); *Medeiros v. O'Connell*, 150 F.3d 164 (2nd Cir. 1998) (same); *Landol-Rivera v. Cruz Cosme*, 906 F.2d 791 (1st Cir. 1990) (same). These cases are of little aid to our inquiry, however, because Vaughan was neither an innocent bystander nor a hostage; instead, he was a suspect whom Deputy Cox sought to apprehend.

The Supreme Court has cautioned against a too finely drawn reading of "means intentionally applied." *Brower*, 489 U.S. at 598, 109 S. Ct. at 1382. It is not necessary for the means by which a suspect is seized to conform exactly to the means intended by the officer; otherwise courts could be compelled to conclude that "one is not seized who has been stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned, or by a bullet in the heart that was meant only for the leg." *Id.* at 598-99, 109 S. Ct. at 1382. Instead, the Supreme Court has held that it is enough "that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result." *Id.* at 599, 109 S. Ct. at 1382. That standard has been met in this case. Cox fired his weapon to stop Vaughan and Rayson, and one of those bullets struck Vaughan.[5] Because Vaughan was hit by a bullet that was meant to stop him, he was subjected to a Fourth Amendment seizure.

### 2. *Is Deputy Cox entitled to qualified immunity?*

Having concluded that Vaughan was subjected to a seizure, we now turn to the merits of Vaughan's Fourth Amendment claim and Deputy Cox's qualified immunity defense. Under *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001), we must

---

[5] The fact that Vaughan was not taken into custody immediately following the shooting is immaterial. As the Supreme Court has noted, the "application of physical force to restrain movement, even when it is ultimately unsuccessful" is sufficient to constitute a seizure. *California v. Hodari D.*, 499 U.S. 621, 626, 111 S. Ct. 1547, 1550 (1991). Undeniably, Cox's firing of his weapon was an application of force designed to restrain Vaughan's movement.

10

conduct a two-part inquiry. *See id.* at 200, 121 S. Ct. at 2155. First, we must ask if the facts, taken in the light most favorable to Vaughan, show that Deputy Cox's conduct violated Vaughan's Fourth Amendment rights. *Id.* at 201, 121 S. Ct. at 2156. Second, if we conclude that a reasonable jury could find that Vaughan's constitutional rights were violated under the facts alleged, we must determine whether Vaughan's rights were clearly established – that is, whether it would have been clear to a reasonable officer that Deputy Cox's conduct was unlawful. *Id.* at 202, 121 S. Ct. at 2156.

As to the first inquiry, we conclude that a reasonable jury could find that Deputy Cox acted unreasonably in firing at the pickup truck. The Fourth Amendment protects individuals from "unreasonable" seizures, and the Supreme Court has clarified when the use of deadly force is "reasonable" for purposes of the Fourth Amendment. In *Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694 (1985), the Supreme Court held that a police officer may use deadly force to seize a fleeing felony suspect when the officer: (1) "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others" or "that he has committed a crime involving the infliction or threatened infliction of serious physical harm;" (2) reasonably believes that the use of deadly force was necessary to prevent escape; *and* (3) has given some warning about the possible use of deadly

force, if feasible. *Id.* at 11-12, 105 S. Ct. at 1701; *Acoff v. Abston*, 762 F.2d 1543, 1547 (11th Cir. 1985).[6] Thus, our inquiry is limited to whether, viewing the facts and drawing all reasonable inferences in Vaughan's favor, a reasonable jury could conclude that, at the time Cox fired the shot that struck Vaughan: (1) Deputy Cox did not have probable cause to believe that Vaughan and Rayson's flight posed an immediate threat of serious harm to Deputy Cox, other police officers, or innocent motorists, or that Vaughan and Rayson had committed a crime involving the infliction or threatened infliction of physical harm; (2) the use of deadly force was not necessary to stop the suspects; or (3) it was feasible to warn Vaughan and Rayson of the possible use of deadly force. *See Acoff*, 762 F.2d at 1547.

We conclude that a reasonable jury could find, under Vaughan's version of the facts, that Deputy Cox's use of deadly force to apprehend Vaughan and Rayson was unconstitutional. Genuine issues of material fact remain as to whether Vaughan and Rayson's flight presented an immediate threat of serious harm to Cox or others at the time Cox fired the shot that struck Vaughan. Based on Vaughan's version of the events, it is not clear that Cox had probable cause to believe that Looney or Cox were in immediate danger from the suspects at the time of the shooting. Nor does the record reflect that the suspects had menaced or were likely to menace others on the

_____

[6]      There is no dispute that Vaughan was a suspect in at least one felony.

12

highway at the time of the shooting. Instead, the truck's lane was clear of traffic and Rayson made no aggressive moves to change lanes before Cox fired. Moreover, according to Vaughan, the collision between the truck and Cox's cruiser was both accidental and insufficient to cause Cox to lose control. Thus, under this version of the facts, when Deputy Cox discharged his weapon, he simply faced two suspects who were evading arrest and who had accelerated to eighty to eighty-five miles per hour in a seventy-miles-per-hour zone in an attempt to avoid capture. Under such facts, a reasonable jury could find that Vaughan and Rayson's escape did not present an immediate threat of serious harm to Cox or others on the road.[7]

---

[7] In support of his position, Cox cites three cases from our sister circuits in which courts found the application of deadly force in a high-speed pursuit to be reasonable as a matter of law. However, the facts of these cases diverge significantly from the case before us. In *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992), a suspect led an officer on a "wild chase at speeds in excess of ninety miles per hour," attempted to ram the officer's car twice, and drove around a police blockade at high speed in an effort to avoid arrest. 954 F.2d at 344. The officer eventually cornered the suspect in a dead-end street, blocking the suspect's vehicle with his police car. *Id.* After the officer exited his vehicle to make an arrest, the suspect smashed his car into the officer's cruiser and made yet another break for freedom. *Id.* It was only at this point that the officer used deadly force to prevent the suspect's escape. *Id.* The Sixth Circuit concluded that the officer's use of deadly force was justified given that the suspect had demonstrated that he posed a major threat to other officers and the public. *Id.* at 347.

In *Cole v. Bone*, 993 F.2d 1328 (8th Cir. 1993), a suspect driving an eighteen-wheel tractor trailer led the police on a lengthy highway chase at speeds exceeding ninety miles per hour. 993 F.2d at 1330. The suspect thwarted multiple efforts to establish a rolling roadblock, ran through a stationary roadblock, refused to stop after the police had shot out two of the truck's tires, and forced more than one hundred innocent motorists off the road. *Id.* at 1330-31. During the chase, the pursuing officers were continuously compelled to take measures in order to stop the suspect from hitting both police and civilian vehicles on a crowded highway. *Id.* at 1331. After multiple attempts to stop the truck using other means had failed, one of the pursuing officers shot twice at the truck, hoping to disable its engine. *Id.* The suspect was fatally wounded by the second shot. *Id.* The court held that, in light of all the information available to the officer, it was reasonable for the officer to

13

Likewise, a reasonable jury could find that Deputy Cox's use of deadly force was not necessary to prevent escape. When the shots were fired, the vehicles were traveling between eighty and eighty-five miles per hour, Cox's cruiser was parallel with the truck, and another police cruiser was following closely behind. Besides accelerating, the suspects had not engaged in any evasive maneuvers. Moreover, there is evidence that could support a finding that the truck, with trailer in tow, was easily identifiable and could have been tracked, and that the officers could have sought assistance from other jurisdictions to follow the suspects. Viewing the facts in Vaughan's favor, a reasonable jury could conclude that the use of deadly force was not necessary to prevent Vaughan and Rayson's escape.

Lastly, a reasonable jury could find that it was feasible for Cox to warn Vaughan and Rayson of the potential use of deadly force. According to Vaughan's version of the events, Cox pulled his cruiser parallel to the truck, turned on his

conclude that the suspect posed an imminent threat of serious harm. *Id.* at 1333.

Finally, in *Scott v. Clay County*, 205 F.3d 867 (6th Cir. 2000), the police began pursuing a suspect who had raced through an intersection in contravention of a stop sign. 205 F.3d at 871. Rather than stop for the police, the suspect led them on a twenty-minute chase over rural roads at speeds ranging from eighty-five to one hundred miles per hour. *Id.* at 872. The driver testified that he forced at least one motorist off the road during the chase. *Id.* After the suspect's vehicle crashed into a guardrail and came to a stop, one of the pursuing officers parked and exited his cruiser to make an arrest. *Id.* The suspect's vehicle rapidly accelerated in the officer's direction, forcing the officer to leap out of the way to avoid being struck. *Id.* As the suspect sped at another police vehicle that was approaching the scene, the officer fired his weapon to stop the suspect's escape. *Id.* In holding that the officer acted reasonably in applying deadly force, the Sixth Circuit concluded that the record demonstrated that the suspect's "ongoing felonious misconduct posed an immediate threat to the safety of officers as well as innocent civilians." *Id.* at 877.

rooftop lights, and traveled alongside the truck for thirty to forty-five seconds before firing his weapon. A reasonable jury could conclude that Cox had the time and opportunity to warn Vaughan and Rayson that he was planning to use deadly force before he opened fire.

We are loath to second-guess the decisions made by police officers in the field. *See Graham v. Connor*, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 1872 (1989). But we simply cannot conclude as a matter of law that a reasonable jury could not find that Deputy Cox's actions were unreasonable under the standards for using deadly force articulated in *Garner*. Accordingly, we conclude under the first prong of the *Saucier* analysis that Vaughan has alleged facts which could support a jury's finding that Cox violated Vaughan's Fourth Amendment rights. Thus, the district court erred in granting the Defendants summary judgment on the ground that no Fourth Amendment violation occurred. The issue is one for the jury. Deputy Cox disputes much of Vaughan's version of the events leading up to the shooting; for example, Cox maintains that the suspects rammed his vehicle, causing him to lose control momentarily, and swerved at him before he fired his weapon. A jury accepting Cox's assertions could conclude that Vaughan and Rayson presented a serious threat to Cox or others on the road, or that Cox had probable cause to believe that Vaughan and Rayson, in ramming Cox's cruiser and swerving towards him, had "committed a

15

crime involving the infliction or threatened infliction of serious physical harm," that the use of deadly force was necessary to prevent escape, and that it was not feasible for Cox to warn Vaughan and Rayson. *Garner*, 471 U.S. at 11-12, 105 S. Ct. at 1701. Nonetheless, our obligation at this stage of the proceedings is to view all of the evidence in the light most favorable to Vaughan.

Having concluded that the facts alleged could establish a constitutional violation, we now turn to the second prong of the *Saucier* analysis and ask whether it would have been clear to an objectively reasonable officer that Deputy Cox's conduct was unlawful. It is well-settled that a constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). In determining whether the contours of a constitutional right are clearly established, we examine cases that announce general constitutional rules and cases that apply those rules to factual circumstances to determine if a reasonable public official, who is charged with knowledge of such decisions, would have understood the constitutional implications of his conduct. With regard to this inquiry, the Supreme Court in *Hope* cautioned that we should not be unduly rigid in requiring factual similarity between prior cases and the case under consideration. The "salient question," the Court said, is whether the state of the law

16

gave the defendants "fair warning" that their alleged conduct was unconstitutional. *Hope*, 536 U.S. at 741, 122 S. Ct. at 2516.

As noted above, the constitutionality of a police officer's use of deadly force is evaluated in light of *Garner*. *See Garner*, 471 U.S. at 11, 12, 105 S. Ct. at 1701. In contrast, the standard for determining whether an officer who may not have been constitutionally permitted to use deadly force should still be entitled to qualified immunity is distinct, albeit similar. *See Saucier*, 533 U.S. at 204, 121 S. Ct. at 2158. Under that standard, an officer will be entitled to qualified immunity if he had "arguable probable cause" to employ deadly force; in essence, we decide whether "the officer reasonably could have believed that probable cause existed" to use deadly force. *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997). In evaluating an officer's assertion of a qualified immunity defense, we apply an objective standard, asking "whether the officer's actions are objectively reasonable in light of the facts confronting the officer, regardless of the officer's underlying intent or motivation." *Id.* at 183.

Taking the facts as alleged by Vaughan, an objectively reasonable officer in Deputy Cox's position could not have believed that he was entitled to use deadly force to apprehend Vaughan and Rayson. Under *Garner*, a police officer can use deadly force to prevent the escape of a fleeing non-violent felony suspect only when

17

the suspect poses an immediate threat of serious harm to police officers or others. In this case, the danger presented by Vaughan and Rayson's continued flight was the risk of an accident during the pursuit. Applying *Garner* in a common-sense way, a reasonable officer would have known that firing into the cabin of a pickup truck, traveling at approximately 80 miles per hour on Interstate 85 in the morning, would transform the risk of an accident on the highway into a virtual certainty. The facts of this case bear out these foreseeable consequences. Thus, Deputy Cox is not entitled to summary judgment, on qualified immunity grounds, regarding Vaughan's § 1983 claim predicated on the Fourth Amendment.

But Cox is not foreclosed from asserting a qualified immunity defense at trial. If the jury were to accept Cox's version of the facts, the qualified immunity analysis would be changed. If Rayson and Vaughan's collision with Cox's cruiser was not accidental, or if Rayson intentionally swerved towards Cox's cruiser, the jury could conclude that Cox had probable cause to believe that Rayson had "committed a crime involving the infliction or threatened infliction of serious physical harm." *Garner*, 471 U.S. at 11-12, 105 S. Ct. at 1701. And, under those facts, the risk presented by Cox's allowing Rayson and Vaughan's flight to continue is starkly different. Rather than the simple risk of an unintended accident, Cox may have been faced with the danger of intended harm brought about by Vaughan and Rayson. Cox may seek

18

special interrogatories to the jury to resolve factual disputes going to the qualified immunity defense. *See Johnson v. Breeden*, 280 F.3d 1308, 1317-18 (11th Cir. 2002); *Cottrell v. Caldwell*, 85 F.3d 1480, 1487-88 (11th Cir. 1996); *Kelly v. Curtis*, 21 F.3d 1544, 1546-47 (11th Cir. 1994).

B.    Vaughan's Substantive Due Process Claim

We conclude that Vaughan's substantive due process claim, which is predicated on the Fourteenth Amendment and based on Cox's alleged deliberately indifferent and conscience-shocking conduct, lacks merit. The Supreme Court has held that in cases in which police officers are required to make quick judgments about the proper course of action and therefore cannot deliberate before acting, even a showing that the officer's recklessness caused the plaintiff's injury is insufficient to support a substantive due process claim. *See County of Sacramento v. Lewis*, 523 U.S. 833, 853-54, 118 S. Ct. 1708, 1720 (1998). Instead, a violation of substantive due process will be found only when a plaintiff can show that the officer had "a purpose to cause harm unrelated to the legitimate object of arrest." *Id.* at 836, 118 S. Ct. at 1711. Vaughan has not presented any evidence to suggest that Cox's actions were motivated by anything but the desire to arrest Vaughan and Rayson. Accordingly, we affirm the grant of summary judgment to all Defendants on Vaughan's substantive due process claim.

19

## IV. CONCLUSION

Viewing the facts in the light most favorable to Vaughan, Deputy Cox is not entitled to summary judgment based on qualified immunity on Vaughan's Fourth Amendment claims. Accordingly, we VACATE the district court's judgment to the extent that it granted summary judgment in Cox's favor on Vaughan's 42 U.S.C. § 1983 Fourth Amendment claim. Because the district court did not address whether a viable official-capacity action could be brought against Deputy Cox or Sheriff Yeager,[8] or whether Coweta County could be held liable for Cox's actions, we VACATE the grant of judgment in favor of all Defendants on Vaughan's 42 U.S.C. § 1983 Fourth Amendment claim, and leave these issues to the district court to address in the first instance. And, because we reinstate the federal claims, we VACATE the district court's discretionary dismissal of the state law claims. The district court's judgment is otherwise AFFIRMED.

AFFIRMED IN PART; VACATED IN PART AND REMANDED.

---

[8]     It is not clear what entity is sued in Vaughan's official-capacity claims against Cox and Yeager.