Suzanne HARRELL, Plaintiff,

v.

Larry CAMPBELL, etc., et al., Defendants.

No. 4:06cv362–RH/WCS.

United States District Court, N.D. Florida, Tallahassee Division.

March 20, 2007.

Andrea Lynn Reino, Richard Errol Johnson, Richard E Johnson Pa, James Vernon Cook, James V. Cook PA, Tallahassee, FL, for Plaintiff.

John W. Jolly, Jr, Jolly & Peterson PA, Tallahassee, FL, for Defendants.

### ORDER CONTINUING TRIAL

HINKLE, Chief Judge.

Defendants—a deputy sheriff in his individual capacity and a sheriff in his official capacity—have moved to stay proceedings during the individual defendant's appeal of the denial of his motion for summary judgment based on qualified immunity. I continue the trial and stay pretrial proceedings related only to the claim against the individual defendant. I do not stay proceedings related to the claim against the official capacity defendant.

### I

This action arises from a traffic stop in which a deputy sheriff fired upon and wounded a suspect who was attempting to flee by driving away. The suspect, Suzanne Harrell, has sued the officer, Leon County, Florida, Deputy Sheriff James Goodman, in his individual capacity, and the Sheriff, in his official capacity. Ms. Harrell claims the shooting was a constitutionally excessive use of force. Deputy Goodman moved for summary judgment on the basis of qualified immunity. I denied the motion "because resolving factual disputes in the suspect's favor, a jury could find the deputy's use of force violated clearly established law, as defined by a controlling Eleventh Circuit decision." Order of March 9, 2007, at 1. The controlling decision cited in the order was *Vaughan v. Cox,* 343 F.3d 1323, 1329–30 (11th Cir.2003).

The order denying summary judgment relied on the sworn evidence in this record, with factual disputes resolved in favor of Ms. Harrell as the non-moving party. With factual disputes properly resolved in that manner, the record indicates that Deputy Goodman shot Ms. Harrell without warning as she drove away from a traffic stop on a flat tire. Deputy Goodman knew Ms. Harrell's identity; indeed, he was holding her driver's license. Deputy Goodman was in no danger at that time, nor was anyone else. There was little prospect Ms. Harrell would escape on a flat tire. There was little prospect that if Ms. Harrell somehow eluded capture that night she would avoid prompt arrest at her home or otherwise. And there was no reason to believe Ms. Harrell was armed or dangerous or would pose any risk to anyone between the time of any flight and the time of any eventual capture. In short, there was far less basis to shoot Ms. Harrell than to shoot the plaintiff in *Vaughan v. Cox.* If, as the Eleventh Circuit held, there was no qualified immunity

in *Vaughan,* there plainly was no qualified immunity here.

## II

Deputy Goodman has filed a notice of appeal from the denial of summary judgment. Both defendants have moved to stay further proceedings in this court. The motion was addressed at a status conference on March 19, 2007. Asked to identify the issues he will raise on appeal, Deputy Goodman took no exception to the assertion that, on the view of the facts outlined in the March 9 order and summarized above, *Vaughan* establishes that Deputy Goodman has no qualified immunity. Nor did Deputy Goodman take exception to the assertion that the sworn evidence in this record supports that view of the facts. Deputy Goodman's contention instead was that some of the sworn evidence in this record does not matter, because Ms. Harrell is stuck with the facts established by her conviction in state court on charges arising from the events at issue.

The March 9 order addressed Deputy Goodman's contention and concluded that the facts necessary to the state court convictions under the governing Florida statutes were not inconsistent with the view of the evidence summarized above. Nor were the convictions inconsistent with the conclusion that at the time when Deputy Goodman shot Ms. Harrell, she did not "pose[ ] a threat of serious physical harm, either to the officer or to others," and had not "committed a crime involving the infliction or threatened infliction of serious physical harm," as required prior to the use of deadly force. *Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). And even if the convictions were somehow deemed to establish that Ms.

Harrell did pose such a risk or had committed such a crime—conclusions inconsistent with the Eleventh Circuit's decision in *Vaughan*—the convictions spoke not at all to the other prerequisites to the use of deadly force as set forth in *Garner:* that Deputy Goodman reasonably believed the use of deadly force was necessary to prevent Ms. Harrell's escape, and that Deputy Goodman gave some warning about the possible use of deadly force, if possible. *Garner,* 471 U.S. at 11–12, 105 S.Ct. 1694.

In short, under *Garner* as construed in *Vaughan,* Deputy Goodman should not prevail on his appeal of the order denying his summary judgment motion.

## III

This does not mean, however, that Deputy Goodman's appeal is frivolous. It is not. The effect of the state court convictions on this civil rights action is an issue that has been raised in good faith in this court and that, *at an appropriate time,* could be pursued in good faith on appeal. That much is clear. Less clear is whether now is an appropriate time for such an appeal.

As an original matter, one could well question whether interlocutory appeals in qualified immunity cases should be available at all.

Such appeals interfere with effective case management at the trial level, in essence affording defendants at least one free continuance. Parties who know the litigation may go on for years have less incentive to prepare and resolve the case within a reasonable time.

Such appeals consume substantial appellate resources and force the Court of Appeals to resolve important issues based on

an unrealistic view of the facts (those determined by resolving disputes in one side's favor rather than accurately). This does not violate the case or controversy requirement; the unrealistic facts must be supported by evidence (whether or not credible), and there is thus a live case or controversy. But addressing important constitutional issues on a version of the facts that might never be sustained is at least somewhat inconsistent with salutary principles of judicial restraint that long have held sway in the federal courts. *See generally Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 341, 345–46, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (setting forth fundamental principles of constitutional adjudication, including that, "The Court will not 'anticipate a question of constitutional law in advance of the necessity of deciding it' ") (quoting earlier authorities in part); *see also Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."), *quoted with approval in Siegel v. LePore*, 234 F.3d 1163, 1179 n. 12 (11th Cir.2000); *cf. Hayburn's Case*, 2 U.S. 408, 2 Dall. 409, 1 L.Ed. 436 (1792) (forbidding federal courts from rendering advisory opinions).[1]

In many qualified immunity cases, there would be no appeals at all, but for the availability of interlocutory appeals. History teaches that most civil cases settle, and in those that go to trial, a verdict often is dispositive, leaving little basis for any appeal. This may explain why, in this circuit, there are seemingly more qualified immunity decisions than opinions addressing underlying constitutional issues in any other context.

In sum, there are very good reasons for the federal courts' long tradition of disallowing interlocutory appeals in all but exceptional circumstances, and good reasons to apply the same approach in qualified immunity cases.

It is true, of course, that qualified immunity is designed to protect public employees from the burden of litigation, not just from adverse judgments. This is the justification offered by proponents of interlocutory appeals in qualified immunity cases. But in fact if not in theory, interlocutory appeals often undermine rather than promote this goal. Because of such appeals, litigation against individual officers usually lasts longer, costs more, and imposes a greater personal burden on individual officers than it would otherwise. The experience in this court has been clear and uniform: every case in which an officer has taken an interlocutory appeal has remained pending longer than it otherwise would have, regardless of who wins the appeal. And the financial and personal burden of litigation often varies with how long the case remains pending.

One reason that interlocutory appeals do not expedite the litigation is that federal claims against individual officers—that is,

1. Indeed, this problem is exacerbated by the Supreme Court's instruction to the courts of appeals to address the merits of the underlying constitutional issue even when the case can be resolved on the ground that the critical law was not clearly established. *See, e.g., Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Little attention has been given to the interplay between the *Saucier* principle and the availability of interlocutory appeals of orders denying qualified immunity defenses. The two doctrines have a synergistic effect squarely at odds with the *Ashwander* principles.

claims subject to a qualified immunity defense—almost never occur in isolation. There are almost always other claims, either against an entity (such as a city or county), or against an official capacity defendant (like the Sheriff in the case at bar), or arising under state law (sometimes including claims against the individual officer himself). In these cases, the litigation will proceed, even if the individual officer's qualified immunity defense from federal claims is sustained. And when (as may be true in the case at bar) the individual officer receives a defense from, and will be indemnified by, his employer or an insurer or self-insurance fund, the actual burden borne by the individual officer may be roughly the same, whether or not he remains an individually named defendant with respect to the federal claims.

In sum, if we wrote on a clean slate, much could be said for doing away with interlocutory appeals in qualified immunity cases, except under 28 U.S.C. § 1292(b) when truly warranted. On this issue, like most others, litigants would have to rely on district judges to manage the litigation and make correct decisions, subject to each side's right to appeal at the end (or earlier, if appropriate, under § 1292(b)). Courts of appeals would address real issues that affected the outcome of real controversies, based on findings of fact reflecting a reasoned analysis of the credible evidence. That approach has worked in federal litigation of all types from the earliest days of the republic.

But alas, the slate is not clean. The Supreme Court has held that some issues relating to qualified immunity are immediately appealable under the collateral order doctrine. *See Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The Supreme Court also has made clear that *Mitchell* does not create a blanket rule allowing interlocutory appeals whenever a district court denies a motion to dismiss or for summary judgment based on qualified immunity. Thus, for example, an officer cannot appeal the district court's determination of the facts established by the summary judgment record. *See Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). Although the Eleventh Circuit often has taken an exceptionally broad view of the appealability of qualified immunity orders, it has sometimes recognized that not all such orders are appealable. *See, e.g., Koch v. Rugg,* 221 F.3d 1283 (11th Cir.2000); *Gardner v. City of Camilla, Ga.,* 186 Fed.Appx. 860 (11th Cir.2006); *Jolivette v. Arrowood,* 180 Fed.Appx. 883 (11th Cir.2006).

The typical instance in which an interlocutory appeal is available is when there is a dispute over whether the applicable law was clearly established at the time at issue. *See, e.g., Koch,* 221 F.3d at 1296. The case at bar involves no such issue; *Vaughan* held that the applicable law *was* clearly established and prohibited a shooting even under circumstances more egregious than those established by this record (at least on my view of this record). Rather than an issue about the clearly established law, the issue in the case at bar is the facts. Did the officer shoot a fleeing suspect who posed no danger to anyone and who was unlikely to escape, or did he shoot a suspect actively engaged in resisting and indeed assaulting the officer? Under *Johnson,* this factual dispute is not an appealable issue. But here there is a twist—the effect of the state court convictions. To some extent, at least, this is an issue of law.

The question of whether an interlocutory appeal will lie in these circum-

stances is unsettled. Deputy Goodman's contention that an appeal *will* lie is by no means frivolous. Because Deputy Goodman makes a good faith claim of appealability and a good faith claim on the merits of the appeal, I conclude that a stay of proceedings against Deputy Goodman is appropriate, at least until the Eleventh Circuit has an opportunity to determine for itself whether the summary judgment order is properly subject to interlocutory appeal.

■ That leaves for consideration the issue of proceedings against the other defendant (the Sheriff in his official capacity). Official capacity defendants of course have no qualified immunity. The Sheriff did not move for summary judgment and instead acknowledges that he is headed for trial, sooner or later. Even so, it would make little sense to try the case twice. Most if not all of the evidence that will be presented against Deputy Goodman (if he is unsuccessful on appeal) also will be presented on the claim against the Sheriff. The trial should be continued, even as against the Sheriff, until the appeal is resolved.

This does not mean, however, that discovery relevant to the claim against the Sheriff should end. Discovery relevant to *that* claim may go forward. This includes discovery that is also relevant to the claim against Deputy Goodman, so long as it is relevant to the claim against the Sheriff. Proceeding with such discovery will compromise Deputy Goodman's interests not a

whit. And this is so even with respect to the deposition of Deputy Goodman himself; he is a witness who will be subject to deposition whether or not his qualified immunity defense is sustained on appeal.[2]

For these reasons,

IT IS ORDERED:

1. Defendants' motion to stay is GRANTED IN PART.

2. The trial and pretrial conference are continued to dates to be set upon resolution of the pending appeal and in accordance with this order.

3. The discovery deadline is extended to a date two weeks before the pretrial conference.

4. The deadline for selecting a mediator is not extended and has passed; if the parties have not selected a mediator, they shall do so by April 2, 2007. The deadline for commencing mediation is extended to a date 14 days after issuance of the Eleventh Circuit mandate. The deadline for concluding mediation is extended to a date 28 days after issuance of the Eleventh Circuit mandate.

5. The deadline for filing potentially dispositive motions is not extended and thus remains March 21, 2007.[3]

6. The clerk shall reschedule the pretrial conference for the first available date at least 49 days after the date of the Eleventh Circuit mandate. The deadline for the attorney conference required by

---

**2.** Deputy Goodman is represented by the same attorney who represents the Sheriff. Deputy Goodman has suggested no difference in the preparation he will undertake, or in the testimony he will give, whether deposed now or later, and whether he does or does not remain a defendant. In short, there is no reason to require the parties to delay this deposition. Time is no longer of the essence,

however, and the parties may reschedule the deposition to a more convenient time than now set. The same is true of the deposition of the Sheriff.

**3.** All parties indicated at the March 19 status conference that they did not expect to file any further potentially dispositive motions.

the Order for Pretrial Conference docketed January 22, 2007 (document 19) is extended to a date 21 days before the pretrial conference. The deadline for filing the pretrial stipulation and other papers required by paragraphs III and IV of the Order for Pretrial Conference docketed January 22, 2007 (document 19) is extended to a date seven days before the pretrial conference.

7. By separate notice to be issued promptly after issuance of the Eleventh Circuit mandate, the clerk shall set the trial for the first trial period commencing at least 70 days after the date of the mandate. If no such notice has been issued within 14 days after issuance of the mandate, each party shall file a notice citing this paragraph of this order and stating that the case has not been noticed for trial, provided, however, that a party need not file such a notice if another party already has done so. Within 14 days after issuance of the clerk's notice setting the trial, any party with a conflict during the trial period may file a notice to that effect, and the notice will be given such consideration as may be appropriate.

SO ORDERED.