[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11081
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-00145-MW-GRJ


RANDALL R. PREVATT,

                                        Plaintiff - Appellant,

versus

CITY OF GAINESVILLE, FLORIDA,
A municipal corporation,
JEREMIAH KELLY,
In individual capacity,
DANIEL ABBOTT,
In individual capacity,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(August 8, 2016)

Before WILLIAM PRYOR, FAY, and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiff Randall Prevatt appeals the district court's order granting summary judgment in favor of Defendants Corporal Jeremiah Kelly and Officer Daniel Abbott ("Defendant Officers") in Plaintiff's 42 U.S.C. § 1983 civil action.[1] Plaintiff contends that Defendant Officers used excessive force in violation of the Fourth Amendment. No reversible error has been shown; we affirm.

This appeal arises out of an incident that occurred on 2 January 2013. Viewed in the light most favorable to Plaintiff, these facts are pertinent.[2] On the day of the incident, Plaintiff was moving (on foot) his personal belongings from a room he had been renting to a nearby temporary campsite. Earlier that morning, Plaintiff had consumed 12 beers. He says that he might have been "drunk" when he encountered Defendant Officers. Shortly after 2pm, Plaintiff walked down a public sidewalk along a busy street, close to an elementary school. Plaintiff was

---

[1] Plaintiff has abandoned expressly his section 1983 claim for excessive force against the City of Gainesville. Plaintiff also raises no challenge to the district court's refusal to exercise supplemental jurisdiction over Plaintiff's state law claims for battery and for negligent supervision.

[2] Contrary to Plaintiff's argument on appeal, the record demonstrates that the district court construed properly all genuinely disputed material facts in the light most favorable to Plaintiff.

carrying a 30-inch air rifle pistol (designed for shooting BBs) in his left hand and two 8-inch kitchen knives in his right hand.

Meanwhile, Defendant Officers received notice of at least two 911 calls reporting that a man was walking near an elementary school with what appeared to be an assault rifle.[3] Shortly after receiving the 911 calls, Defendant Officers found Plaintiff and saw that Plaintiff was carrying what looked like a rifle in his left hand.

The encounter between Defendant Officers and Plaintiff was captured by a security camera.[4] Defendant Officers pulled up behind Plaintiff and came out of their patrol car with their guns drawn. Defendant Officers ordered Plaintiff to drop his gun. Plaintiff turned to face Defendant Officers and immediately tossed his gun on the ground. Defendant Officers then saw the knives in Plaintiff's right hand and ordered Plaintiff to drop the knives; Plaintiff complied.

Defendant Officers then ordered Plaintiff to put his hands in the air and to get on the ground. Instead of complying immediately, however, Plaintiff turned around and took three to four steps away from Defendant Officers. In response, Defendant Officers began running toward Plaintiff. Plaintiff then stopped and

---

[3] The district court took judicial notice that this incident took place less than three weeks after the mass shootings at Sandy Hook Elementary School in Newtown, Connecticut. The district court also noted that on the date of this incident the local elementary school was closed for winter break, although no officer involved in this stop knew the school was closed.

[4] We note, however, that the surveillance video contains no audio component.

raised his hands above his head. Almost simultaneously, Defendant Officers --

who were already approaching Plaintiff at full speed -- made contact with Plaintiff,

shoving Plaintiff in the back, causing Plaintiff to fall face-first onto the sidewalk.

Plaintiff suffered serious injuries as a result. The entire encounter (from the time

Defendant Officers exited their patrol car to the time Plaintiff was knocked to the

ground) lasted about 11 seconds.

Plaintiff filed this civil action against Defendant Officers individually,

alleging that Defendant Officers used excessive force (in violation of the Fourth

Amendment) when they shoved Plaintiff to the ground. The district court granted

Defendant Officers' motion for summary judgment: a motion based on an assertion

of qualified immunity.

We review de novo a district court's grant of summary judgment, viewing

the evidence and all reasonable factual inferences in the light most favorable to the

nonmoving party. Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007).

When a video recording exists of the pertinent events -- as in this case -- we

"view[] the facts in the light depicted by the videotape." Scott v. Harris, 127 S. Ct.

1769, 1776 (2007).

"Qualified immunity offers complete protection for government officials

sued in their individual capacities if their conduct 'does not violate clearly

established statutory or constitutional rights of which a reasonable person would

4

have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). To avoid summary judgment based on qualified immunity, Plaintiff must show both that Defendant Officers violated a federal right and that the right was already clearly established when Defendant Officers acted. See id. The doctrine of qualified immunity, when applied properly, "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011).

A federal right is "clearly established" when "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Id. at 2083 (quotations and alterations omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015).

"Although suspects have a right to be free from force that is excessive, they are not protected against a use of force that is necessary in the situation at hand." Jean-Baptiste v. Gutierrez, 627 F.3d 816, 821 (11th Cir. 2010) (quotations omitted). The right is highly contextualized: the right must be judged in the light of the particular situation. An officer's use of force is unconstitutionally excessive only if the force used was "objectively [un]reasonable in light of the facts and

5

circumstances confronting" the officer.  Graham v. Connor, 109 S. Ct. 1865, 1872 (1989) (quotations omitted).

"In determining the reasonableness of the force applied, we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." McCullough v. Antonlini, 559 F.3d 1201, 1206 (11th Cir. 2009).  We consider, among other things, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham, 109 S. Ct. at 1872.  Given the right is fact sensitive, predicting whether the right has been violated in any particular case is often difficult because all and so many different facts must be weighed in the balance.

We stress that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.  And we must allow "for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation."  Id.  "We are loath to second-guess the

decisions made by police officers in the field." Vaughan v. Cox, 343 F.3d 1323, 1331 (11th Cir. 2003).

The evidence, viewed in the light most favorable to Plaintiff, shows that Defendant Officers acted objectively reasonably when they pushed Plaintiff to the ground. Defendant Officers -- responding to at least two 911 calls from concerned citizens -- had just encountered Plaintiff walking along a busy street in a populated area, within 30 feet of an elementary school, and armed with two knives and what Defendant Officers believed reasonably to be an assault rifle.[5] Given these circumstances -- even in the absence of evidence that Plaintiff had made express threats of violence -- an objective officer could have suspected reasonably that Plaintiff had committed (or was about to commit) a serious crime.

Although Plaintiff complied with Defendant Officers' orders to drop his weapons, Plaintiff failed to obey immediately the officers' commands to put his hands in the air and to get on the ground. Instead, Plaintiff turned around and began walking away from Defendant Officers. Given Plaintiff's seemingly noncompliant behavior -- and given the possibility that Plaintiff still possessed additional weapons -- an objective officer in Defendant Officers' position could have believed reasonably that Plaintiff still posed a threat of serious injury to the

---

[5] That Plaintiff's gun in fact turned out to be a BB gun is not important. The reasonableness of force used is not judged "with 20/20 vision of hindsight." See Graham, 109 S. Ct. at 1872. Because Plaintiff's gun appeared to be made of black metal and contained no obvious markings distinguishing it from an actual firearm, it was reasonable for Defendant Officers to believe the gun was real and to respond accordingly.

officers and to bystanders and that Plaintiff was attempting to evade arrest. Faced with a "tense, uncertain, and rapidly evolving" situation, Defendant Officers made a split-second decision to force Plaintiff to the ground in an attempt to gain control of the situation and to avoid the risk of serious injury. Under these circumstances, we cannot say that Defendant Officers' decision to use non-lethal force was unreasonable in the Fourth Amendment sense.

In support of his claim of excessive force, Plaintiff relies on several decisions, all of which involve the use of force against a suspect who had either already submitted to police authority or who was already handcuffed.[6] In this case, however -- at the moment Defendant Officers decided to use force against Plaintiff -- Plaintiff was <u>not</u> handcuffed and had <u>not</u> submitted clearly to Defendant Officers' authority. That Plaintiff raised his hands in the air less than one second before Defendant Officers struck Plaintiff, does not render Defendant Officers' initial decision to use force constitutionally unreasonable under these circumstances.

---

[6] See <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1330 (11th Cir. 2008) (single punch to stomach of non-resisting, handcuffed suspect constituted excessive force); <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1198 (11th Cir. 2002) (involving use of force against plaintiff after plaintiff was arrested and handcuffed); <u>Slicker v. Johnson</u>, 215 F.3d 1225, 1233 (11th Cir. 2000) (involving use of force against non-resisting, handcuffed suspect); <u>Priester v. City of Riviera Beach</u>, 208 F.3d 919, 927-28 (11th Cir. 2000) (affirming denial of qualified immunity where officers ordered police dog to attack plaintiff after plaintiff submitted to arrest); <u>Smith v. Mattox</u>, 127 F.3d 1416 (11th Cir. 1997) (involving use of force while handcuffing suspect who had "docilely submitted to arrest").

Plaintiff contends that he intended to comply with Defendant Officers' orders to get on the ground, but was delayed in doing so by his arthritic leg. Accepting Plaintiff's version of the facts as true -- and considering that Plaintiff said nothing to Defendant Officers either about his willingness to comply or about his physical impairment and that Plaintiff was not visibly limping -- it was reasonable for Defendant Officers to perceive Plaintiff's delay as a sign of intentional noncompliance.[7]

Plaintiff has failed to establish that Defendant Officers' use of force constituted a violation of his Fourth Amendment rights. Moreover, it was not already clearly established -- such that the question was "beyond debate" -- at the time Defendant Officers acted in 2013 that the amount of force used to subdue Plaintiff under the circumstances of this case was constitutionally excessive. Defendant Officers are entitled to qualified immunity.

AFFIRMED.

---

[7] We also reject Plaintiff's assertion that he was given inadequate time to comply with Defendant Officers' commands before being subjected to force. The officers' decision to use force was made not because Plaintiff failed to comply timely but because Plaintiff appeared to take affirmative steps (turning and walking away) to avoid compliance with Defendant Officers' orders.