[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-13401

_____

D.C. Docket No. 5:13-cv-00024-CAR


SHARESE M. WELLS,
Administrator for the Estate deceased, Robert K. Chambers,

Plaintiff - Appellant,

versus

CULLEN TALTON,
in his official capacity as Sheriff of Houston County,
STEVEN GLIDDEN,
in his individual capacity,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(May 30, 2017)

Before ED CARNES, Chief Judge, ROSENBAUM and DUBINA, Circuit Judges.

PER CURIAM:

Appellant, Sharese M. Wells ("Wells"), as administrator for the Estate of Robert K. Chambers, ("Chambers" or "decedent"), appeals the district court's order granting Appellees, Houston County Sheriff Cullen Talton ("Sheriff Talton") and Houston County Deputy Sheriff Steven Glidden ("Deputy Glidden"), summary judgment on Wells' civil rights action brought pursuant to 42 U.S.C. § 1983, alleging that Deputy Glidden's use of deadly force violated the decedent's Fourth and Fourteenth Amendment rights.  The complaint also alleged a cause of action for wrongful death pursuant to Georgia state law.  The district court granted summary judgment to Deputy Glidden, finding that he was entitled to qualified immunity on the § 1983 claim and to official immunity on the state law wrongful death claim.  The district court found no merit in the claims against Sheriff Talton.[1] The district court also granted in part and denied in part Wells' Federal Rule of Civil Procedure 59(e) and Rule 60(b) motions.  After reading the briefs, reviewing the record, and having the benefit of oral argument, we affirm the district court's judgment.

---

[1] Although Wells' notice of appeal includes the district court's grant of summary judgment to Sheriff Talton, because she has failed to make any arguments about her claims against him she has abandoned them.  *See Access Now v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

**I. BACKGROUND**

A. Facts

This is a tragic case because a young man lost his life. Regardless of the legal liability, or lack thereof, there are no winners in this case. The following facts are taken from the record evidence available to the district court when it entered summary judgment.

On the morning of January 24, 2011, Deputy Glidden heard a radio broadcast alerting him to the fact that there was a residential burglary in progress. Deputy Glidden, who was in the vicinity serving civil papers, radioed in and was instructed to assist in the investigation. The dispatcher was unable to provide Deputy Glidden with a description of the suspect, but warned Deputy Glidden that the suspect was possibly armed with a loaded .45 caliber pistol because a weapon matching that description was missing from the residence.

While searching for the suspect, Deputy Glidden encountered Chambers in a wooded area located near a middle school and the scene of the burglary. Chambers was wearing a large black jacket with the hood pulled over his head and had both of his hands in his pockets. Deputy Glidden testified that he had no reason to suspect Chambers was the burglar, but was concerned when Chambers refused to show his hands. The district court described the events that unfolded as follows:

> According to Deputy Glidden, he told Chambers numerous times to remove his hands from his jacket pockets. After his second command, Chambers

3

asked "Why? What's going on?," but Glidden refused to answer. Instead, Glidden commanded Chambers again to take his hands out of his pockets and to take the hood of his jacket off. Chambers complied with Glidden's latter request by tilting his head back so the hood could fall off, but he kept his hands in his pockets. Chambers then began taking slow steps towards Glidden. At that point, Glidden testified that he did not feel threatened by Chambers, and he did not draw his weapon. As Chambers walked closer, Glidden asked Chambers where he lived, and Chambers indicated his mother lived in a subdivision nearby.

When Chambers came within six inches of Glidden, he stepped to Glidden's right as if to walk by him. As he did so, Glidden remained still with his eyes focused on the area from which Chambers came to make sure no one was coming up from behind. Using his peripheral vision, Glidden saw Chambers start to pull his left hand from his jacket pocket and saw the butt of a pistol in Chambers' left hand.

Upon seeing the butt of the pistol, Glidden grabbed Chambers' left hand, tried to push it back into his pocket, and seized Chambers with his other hand. Glidden yelled for Chambers to let go of the gun and get on the ground, as he physically struggled with him. During the struggle, Glidden testified he felt Chambers pulling on Glidden's Glock pistol in its holster, jerking it, and attempting to pull it out. Chambers, however, never gained control over Glidden's pistol. While still struggling to get Chambers to the ground, Glidden deployed his taser in an attempt to get Chambers under control. Glidden heard the taser clicking and knew that he did not have a "good connection"; instead, Deputy Glidden received a shock from the taser and dropped it.

That taser was equipped with a camera that began recording after Glidden pulled it during the struggle. The camera recorded the next twenty seconds of the encounter. In that video, Glidden repeatedly yells at Chambers to get on the ground and tugs Chambers by the front of his shirt. Chambers gets down on his hands and knees, and responds "I'm on the ground, sir!" No weapon can be seen on the video. The camera begins to shake, and Chambers disappears from the camera's view. For the next twelve seconds, the camera moves quickly, showing flashing unrecognizable images before falling to the ground. One can hear a single gunshot as the video comes to an end.

4

After dropping the taser, Deputy Glidden lost control of Chambers. Glidden testified that he held onto Chambers' jacket, but Chambers wriggled free of his jacket, pulled away from Glidden, and fled towards the neighborhood where other deputies and residents were located. Glidden held Chambers' jacket in his hand when it came off, and he did not feel the weight of the gun he had seen seconds earlier in the jacket pocket. Believing Chambers still had the gun, Glidden quickly threw the jacket aside and retrieved the magazine to his Glock pistol from the ground nearby. Without giving Chambers a verbal command to stop, Glidden fired his Glock pistol once, hitting Chambers in the back of the head and killing him instantly. Glidden testified that he shot Chambers because he believed Chambers was armed and presented an imminent threat to the residents and deputies in the neighborhood. Glidden admitted he did not see a gun in Chambers' possession at the time he shot him, and the undisputed facts show Chambers was unarmed when he fled. Indeed, officers investigating the nearby burglary arrived at the scene and found a .45 caliber handgun lying on the ground roughly five feet from Chambers' jacket and Glidden's taser. The serial number on the gun matched the one belonging to the gun taken from the burglarized house.

(R. Doc. 32, pp. 3–8.)

B. Procedural History

Wells filed a 42 U.S.C. § 1983 complaint against Sheriff Talton, in his official capacity, and Deputy Glidden, in his individual capacity, alleging that Deputy Glidden's use of deadly force violated Chambers' Fourth and Fourteenth Amendment rights. Wells also alleged a state law wrongful death claim. The defendants filed an answer, and after an extended discovery period, they filed a motion for summary judgment. After Wells responded, the district court granted summary judgment to the defendants as to all claims, finding that Deputy Glidden was protected by qualified immunity because his use of deadly force was

5

reasonable under the circumstances and did not violate clearly established law. The district court also found that Deputy Glidden was entitled to official immunity on the state law wrongful death claim.

In September 2015, new counsel entered an appearance on behalf of Wells and filed a motion to alter or amend the judgment. Counsel included numerous exhibits, seeking to introduce new evidence to support the motion. Wells later filed a motion to amend the motion to alter or amend the judgment and included more exhibits. The defendants filed responses to both motions. On June 1, 2016, the district court entered an order granting Wells' motion to amend the motion to alter or amend the judgment but denied her initial motion to alter or amend the judgment. Wells then perfected this appeal.

## II. STANDARDS OF REVIEW

"We review *de novo* a district court's grant of summary judgment based on qualified immunity and apply the same legal standards as the district court." *Draper v. Reynolds*, 369 F.3d 1270, 1274 (11th Cir. 2004). "We resolve all issues of material fact in favor of the plaintiff, and then determine the legal question of whether the defendant is entitled to qualified immunity under that version of the facts." *Bashir v. Rockdale Cty., Ga.*, 445 F.3d 1323, 1327 (11th Cir. 2006) (quotation omitted). "We recognize that facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Oliver*

6

*v. Fiorino*, 586 F.3d 898, 901 (11th Cir. 2009) (internal quotation marks omitted).

Nonetheless "we approach the facts from the plaintiff's perspective because the

issues appealed here concern not which facts the parties might be able to prove,

but, rather, whether or not certain given facts showed a violation of clearly

established law." *Crenshaw v. Lister*, 556 F.3d 1283, 1289 (11th Cir. 2009)

(quoting *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002)).

"We review the denial of a motion to alter or amend a judgment under Rule

59(e) for abuse of discretion." *Shuford v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 508

F.3d 1337, 1341 (11th Cir. 2007).  Similarly, we review a district court's order

denying relief under Rule 60(b) for an abuse of discretion.  *Waddell v. Hendry Cty.*

*Sheriff's Office*, 329 F.3d 1300, 1309 (11th Cir. 2003).

## III. DISCUSSION

Wells challenges the district court's grant of summary judgment and denial

of her Rule 59(e) and Rule 60(b) motions.  First, with respect to the district court's

grant of summary judgment based on qualified immunity grounds, we affirm

because we conclude that, given the evidence at the time of summary judgment,

Deputy Glidden had an objectively reasonable basis to use deadly force on

Chambers.  Second, we conclude that the district court did not abuse its discretion

in denying the Rule 59(e) and Rule 60(b) motions because the evidence submitted

by Wells was not newly discovered.  Finally, we affirm the district court's

judgment on Wells' state law claim because, at the time of summary judgment, there was no evidence that Deputy Glidden's use of deadly force was negligent or performed with actual malice or actual intent to cause injury.

A. Qualified Immunity

"Qualified immunity protects . . . officers from liability in § 1983 actions as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). Because neither party disputes that Deputy Glidden acted within his discretionary authority, the burden shifts to Wells to prove that Deputy Glidden is not entitled to qualified immunity. *See Lee*, 284 F.3d at 1194.

To determine whether an officer is entitled to qualified immunity at the summary judgment stage, we employ a two-part inquiry. First, we ask "whether the facts, [t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right." *Salvato v. Miley*, 790 F.3d 1286, 1292 (11th Cir. 2015) (alterations in original) (quoting *Tolan v. Cotton*, 572 U.S. ___, ___, 134 S. Ct. 1861, 1865 (2014)). Second, we ask "whether the right in question was 'clearly established' at the time of the violation." *Id.* (quoting *Tolan*, 134 S. Ct. at 1866). A plaintiff must satisfy both inquiries in order to defeat

8

qualified immunity.  *See Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816 (2009) ("Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.").  When we perform this analysis, we "may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 134 S. Ct. at 1866.  Our function at summary judgment is to "determine whether there is a genuine issue for trial," not to weigh the evidence.  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986)).

All use of force claims against a police officer are analyzed under the Fourth Amendment reasonableness test.  *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989).  "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S. Ct. at 1872.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . .  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396–97, 109 S. Ct. at 1872.  Thus, a police officer is entitled to qualified immunity "if a reasonable police

officer could have believed his or her actions were lawful in light of clearly established law and the information possessed by the officer." *Stewart v. Baldwin Cty. Bd. of Educ.*, 908 F.2d 1499, 1504 (11th Cir.1990).

In *Vaughan v. Cox*, 343 F.3d 1323 (11th Cir.2003), we reviewed an excessive force claim and recited some of the conditions attendant to the lawful use of deadly force. We observed that a police officer may use deadly force when the officer, "(1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others . . . ; (2) reasonably believes that the use of deadly force was necessary to prevent escape; *and* (3) has given some warning about the possible use of deadly force, if feasible." *Id.* at 1329–30 (quoting *Tennessee v. Garner*, 471 U.S. 1, 11–12, 105 S. Ct. 1694, 1701 (1985) (emphasis in original). The mere failure to give a warning, however, does not preclude summary judgment where the facts otherwise indicate that the officer's use of force was reasonable. *See Penley v. Eslinger*, 605 F.3d 843, 854 n.6 (11th Cir. 2010); *see also Scott v. Harris*, 550 U.S. 372, 382, 127 S. Ct. 1769, 1777 (2007) ("*Garner* did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.' ").

As the district court found, Deputy Glidden's use of deadly force was objectively reasonable because, at the time, Deputy Glidden had probable cause to believe Chambers had committed the serious crime of burglary during which a

10

loaded .45 caliber gun was stolen. When Deputy Glidden encountered the decedent in the wooded area near the burglarized house, the decedent refused to obey Deputy Glidden's commands to show his hands. When Deputy Glidden asked him to show his face, the decedent tilted his head back for his hood to fall rather than using his hands to remove the hood. Approaching the decedent, Deputy Glidden observed the butt of a gun in the decedent's hand, as he slowly began to pull it from his coat pocket. In addition, after a brief struggle, the decedent ran in the direction of the other officers and residents, and Deputy Glidden did not know where the gun was. Deputy Glidden pulled on the decedent's coat and held it but did not feel a weapon in the pocket. He reasonably thought the decedent had the gun with him.[2]

When he made the decision to shoot, Deputy Glidden had probable cause to believe that Chambers was the burglar, that he was armed with a .45 caliber pistol, and that he posed a threat to officers and the public. Thus, Deputy Glidden had to make a "split second judgment" in a situation that was rapidly unfolding. A reasonable officer in Deputy Glidden's position could have believed that deadly force was necessary to prevent the decedent's escape and avert a threat of harm to others. Deputy Glidden resorted to deadly force after his verbal commands and

---

[2] The fact that Officer Glidden was later found to be mistaken about Chambers having the gun as he ran away does not defeat qualified immunity. *See Penley*, 605 F.3d at 854 (finding that officer's use of deadly force was reasonable where suspect held a toy gun modified to look like a real gun).

physical altercation did not subdue the decedent. Under the evidence in the record at the time of summary judgment, viewed in the light most favorable to the plaintiff, we conclude that the district court properly determined that the use of deadly force did not violate Chambers' Fourth Amendment rights. Accordingly, we hold the district court properly granted qualified immunity to Deputy Glidden.[3]

B. Rule 59(e)

Wells filed a Rule 59(e) motion based on newly discovered evidence. In her motion, Wells posits that the investigation was tainted from the beginning. She claims that there was a lack of fingerprint analysis, the gun found at the scene was planted, a cell phone found on the decedent's body was planted at the scene of the burglary, and physical evidence contradicts Deputy Glidden's statement that he shot the deceased while he was fleeing. In support of her claims, Wells attached over 50 exhibits. The district court reviewed the claims and denied the motion.

To support a Rule 59(e) motion based on new evidence, "the movant must show either that the evidence is newly discovered or, if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence." *Chery v. Bowman*, 901 F.2d 1053,

---

[3] Assuming arguendo that Wells could show a Fourth Amendment violation to overcome qualified immunity, she would also have to show that Deputy Glidden's use of deadly force violated clearly established law. "[T]he salient question . . . is whether the state of the law . . . gave respondents fair warning that their alleged [conduct] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516 (2002). Wells cannot meet this burden. She cannot show that the law was developed in such way that it gave Deputy Glidden fair warning that, under the circumstances he encountered, the use of deadly force was unconstitutional.

1057 n.6 (11th Cir. 1990). This motion is not intended to "relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005).

We conclude from the record that the district court did not abuse its discretion in denying the motion. The district court addressed the three affidavits Wells submitted and found that none contained newly discovered evidence. One affidavit is from Wells, one is from the decedent's cousin, and one is from the decedent's sister, and all call into question whether Chambers was near the burglarized home at the time in question. However, as the district court properly found, Wells cannot show how this information was not available at the time the district court entered judgment.

Wells also alleged that the gun found at the scene was the not the gun stolen from the burglarized home. She claims the gun found at the scene was planted by police and is actually a different gun than the one reported missing from the burgled residence. The difference between the description of the gun's color (black) and its actual color (blue) did not raise a genuine issue of material fact because there is undisputed evidence showing that the gun's serial number matched the serial number of the gun stolen earlier that morning. Thus, this information was not "newly discovered" contradictory evidence.

13

Wells further claimed in her motion that genuine issues of material fact exist as to whether the Sheriff's office tampered with evidence. She relies on photos taken by the Sheriff's office and the Georgia Bureau of Investigation, which she contends show inconsistencies in the evidence. She also argues that the police reports, photos, and maps support her theory that the deceased was framed for the burglary. As the district court properly found, none of this evidence was "new."

Lastly, Wells argues that the district court erred because it did not properly construe the facts in her favor when it ruled on the summary judgment motion. She relies on the fact that because Deputy Glidden is the only surviving witness, the district court did not properly consider the circumstantial evidence that would discredit his account of the events. However, as the district court found, the evidence upon which Wells relies is merely speculative and fails to show that Deputy Glidden acted unreasonably after seeing what he believed was a gun in the decedent's pocket.

Wells cites *Tolan v. Cotton*, 572 U.S. ___, 134 S. Ct. 1861, to support her argument that the district court decided disputed issues and credited evidence in favor of Deputy Glidden. *Tolan* does not support her assertion because in that case, before summary judgment was granted, both the plaintiff and his mother offered an account of the events that contradicted the officer's statements, yet the court failed to credit the evidence that supported the plaintiff and his mother's

14

account.  Thus, the Supreme Court found that the Fifth Circuit improperly weighed the evidence and remanded the case.  *Id.* at 1868.

In contrast, here, there is no similar contradictory evidence.  Wells cannot produce any witnesses to contradict Deputy Glidden's statements, nor is there any circumstantial evidence to refute his account.  The district court did not err in construing the facts and properly granted summary judgment to Deputy Glidden on the basis of qualified immunity.  Moreover, Wells does not meet the requirements to be entitled to Rule 59(e) relief.

C. Rule 60(b)

Wells contends that the district court abused its discretion in denying her Rule 60(b) motion based on newly discovered evidence.  Wells suggests that the police tampered with the crime scene and planted evidence.  She also claims that Deputy Glidden's account of the events was not credible, and the district court placed too much emphasis on his sole recount of the shooting.  Wells submitted documents and affidavits to support her claims.  She specifically stated in her motion that she "request[s] that the Court find that it is no longer equitable to impose the judgment, pursuant to Rule 60(b)(5)."  (R. Doc. 36.)

Rule 60(b)(5) justifies relief if "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable."  FED. R. CIV. P. 60(b)(5).  The

15

plain language of this rule operates to prevent "an inequitable operation of a judgment." *Cook v. Birmingham News*, 618 F.2d 1149, 1153 (5th Cir. 1980) (addressing prospective application of a decree).

Rule 60(b)(6), the catchall provision, authorizes relief for "any other reason that justifies relief." FED. R. CIV. P. 60(b)(6). Rule 60(b)(6) motions must demonstrate "that the circumstances are sufficiently extraordinary to warrant relief. Even then, whether to grant the requested relief is . . . a matter for the district court's sound discretion." *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1317 (11th Cir. 2000) (denying relief under Rule 60(b)(6) as well) (internal quotation and citation omitted).

The appellant's burden is heavy. *See Cano v. Baker*, 435 F.3d 1337, 1342 (11th Cir. 2006). "[I]t is not enough that a grant of the [Rule 60(b) motion] might have been permissible or warranted; rather, the decision to deny the motion [] must have been sufficiently unwarranted as to amount to an abuse of discretion." *Griffin v. Swim–Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984). Thus, Wells "must demonstrate a justification so compelling that the [district] court was required to vacate its order." *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993) (quotation and citation omitted).

Wells fails to make a sufficient showing that the district court was required to vacate its order to prevent an inequitable operation of its judgment. The basis

16

for this relief, according to Wells, is that a revised narrative of the events and circumstances surrounding the final days of the decedent's life indicate that it is no longer equitable to impose the judgment granting qualified immunity to Deputy Glidden. As we concluded when discussing Rule 59(e), the evidence was not newly discovered and was available to Wells at the summary judgment stage. It follows that the district court's failure to relieve Wells of the summary judgment order under Rule 60(b)(5) did not amount to an abuse of discretion. Moreover, the need for finality prevents us from allowing litigants to use Rule 59(e) and Rule 60(b) motions to re-litigate old issues or raise new theories of the case after judgment is rendered.

## D.  State law wrongful death claim

Wells filed a state law wrongful death claim against Deputy Glidden pursuant to O.C.G.A. § 51-4-5. The district court properly granted summary judgment on this claim because the evidence at summary judgment did not show that Deputy Glidden's use of deadly force was negligent or performed with actual malice or with actual intent to cause injury. *See Cameron v. Lang*, 549 S.E.2d 341, 345 (Ga. 2001). "The bar for proving malice or an intent to cause injury is high." *Schwartz v. Gwinnett Cty., Ga.*, 924 F. Supp. 2d 1362, 1378 (N.D. Ga. 2013). Here, the evidence at summary judgment shows that Deputy Glidden believed that the use of force was necessary to prevent death or serious bodily harm to other

17

deputies and residents in the neighborhood. Wells presented no evidence at summary judgment creating a genuine issue of material fact that Deputy Glidden's use of deadly force was negligent or that he acted with actual malice or with actual intent to cause injury. Thus, we conclude that the district court properly granted summary judgment on this state law claim.

## IV. CONCLUSION

In conclusion, the district court did not err when it granted summary judgment to the defendants on the § 1983 claim and the state law claim. Additionally, the district court did not abuse its discretion when it denied the Rule 59(e) or the Rule 60(b) motions.

**AFFIRMED.**