# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 3, 2024

Lyle W. Cayce
Clerk

_____

No. 22-10876

_____

Mary Dawes, *Individually and the Administrator of* the Estate of Decedent Genevive A. Dawes; Alfredo Saucedo; Virgilio Rosales,

*Plaintiffs—Appellants*,

*versus*

City of Dallas; Christopher Hess; Jason Kimpel,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CV-1424

_____

Before Dennis, Engelhardt, and Oldham, *Circuit Judges*.

Per Curiam:[*]

On January 18, 2017, Dallas police shot and killed Genevieve Dawes. This federal civil rights suit followed. Defendants prevailed at summary judgment in the court below in a lengthy and careful decision. We agree with the district court that the officer defendants did not violate clearly established

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

law, and so are entitled to qualified immunity. But we remand the claims against the City of Dallas for further consideration.

## I.

## A.

Qualified immunity cases present two questions. First, did the officers violate a constitutional right? And second, was the right at issue clearly established at the time of the officers' alleged violation? *See Morrow v. Meacham*, 917 F.3d 870, 874 (5th Cir. 2019). To reverse the district court in favor of plaintiffs, we must answer "yes" to both questions. We may approach them in either order, and we need not reach both if one proves dispositive. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

This case reaches us after summary judgment. We review a district court's grant of summary judgment de novo. *See Aguirre v. City of San Antonio*, 995 F.3d 395, 405 (5th Cir. 2021). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "material" only when it could change the judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). And a dispute is "genuine" only when the evidence could support a reasonable jury's decision to resolve that dispute against the movant. *See Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (relying on *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986)). Where, as here, facts are documented by video camera, we may take them "in the light depicted by the videotape." *See Scott v. Harris*, 550 U.S. 372, 381 (2007).

## B.

Because excessive force claims are "necessarily fact intensive," we narrate in some detail. *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

No. 22-10876

On the evening of January 17, 2017, Genevieve Dawes and her husband, Virgilio Rosales, parked a black Dodge Journey in the back corner of an apartment complex parking lot and went to sleep in the vehicle. A resident called police and reported a suspicious vehicle. Police ran the tag and were told the car was stolen.[1] Officers were dispatched to the scene around 5:00 AM on January 18.

Officers Christopher Alisch and Zachary Hopkins arrived at the complex first, shortly after 5:00 AM. They found the Journey vehicle boxed in on three of four sides—by fences to the front and left and by another car to the right. They approached with weapons drawn, calling to the driver and repeatedly demanding that the occupants "put your hands out the window." As they shouted, four more officers arrived, including Christopher Hess and Jason Kimpel.

The officers conferred, expressing uncertainty as to whether the Journey was still occupied. The windows of the car were fogged; one officer remarked that "you can't see shit." Around this time, Hess pulled a police cruiser closer to the Journey. He sounded the horn and turned on the cruiser's spotlight.

Hopkins tried to open the right rear door of the Journey and found it locked. Hopkins then moved around behind the Journey and stood near its rear left taillight. Meanwhile, another officer discerned and announced that the Journey was in fact occupied. During the first minute that elapsed after

---

[1] Rosales would later say that Dawes purchased the car from someone else and did not know it was reported stolen, an assertion defendants do not contest. But our analysis centers on the perspective of responding officers at the time of the relevant confrontation. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (instructing that we consider the perspective of the "officer on the scene"). In other words, it does not matter whether the Journey was stolen or who stole it; it matters only that the officers were told the car was stolen.

3

this discovery, officers shouted commands to the effect of "show your hands" eight times and twice identified themselves as Dallas police.

While the officers were shouting, Hopkins and Kimpel stood just behind the Journey. Hopkins decided to retreat and said, "C'mon Kimpel, back up a little bit." The officers retreated but remained in the path directly behind the Journey.

Eight seconds after Hopkins's statement, the Journey's engine ignited. Hess leapt into a police cruiser and said "watch out" as he pulled the cruiser behind the rear bumper of the otherwise boxed-in Journey.

The Journey reversed and collided with Hess's cruiser. The Journey then accelerated forward and hit the fence in front of it. This impact occurred at low speed, but the sound of the impact is audible on Hopkins's body camera, and the jolt of the fence visibly shook the surrounding trees.

Kimpel and Hopkins still stood behind the Journey at the moment of the Journey's impact against the fence. Kimpel said "watch out watch out watch out," and moved laterally out of the Journey's path and towards other officers near the police cruiser. Kimpel passed in front of Hopkins (and could not see Hopkins) as Kimpel traveled.

Hess, after the Journey hit the cruiser, jumped out from the driver's seat and trained his weapon on the Journey. He and other officers shouted several more times for the Journey's occupants to show their hands.

After hitting the fence, the Journey immediately reversed. As it did so, Hess fired twelve rounds, all within a five second interval. Kimpel fired one round, simultaneous with Hess's sixth shot.

Kimpel later stated that he fired his weapon "in fear of Officer Hopkins' life." Hess said he fired to protect both Hopkins and Kimpel, who he believed were in the path of the reversing Journey.

Hopkins's bodycam reveals that, although he was not in Hess's or Kimpel's immediate field of view, he had moved out of the Journey's path several seconds before Hess first fired.

Four of Hess's bullets struck Dawes, who later died at the hospital. None struck Rosales. Kimpel's round struck neither person.

Rosales and Dawes's estate filed a 42 U.S.C. § 1983 excessive force suit against Hess, Kimpel, and the City of Dallas. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (an officer's use of deadly force is a "seizure" within the meaning of the Fourth Amendment). Hess and Kimpel prevailed on qualified immunity grounds at summary judgment. This appeal followed.

## II.

The Supreme Court's approach to qualified immunity reflects concern that, absent privilege for in-the-moment street decision-making, officers would be deterred from "the unflinching discharge of their duties." *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) (quotation omitted). Accordingly, qualified immunity shields officers from civil suit unless they had "fair notice that [their] conduct was unlawful." *Nerio v. Evans*, 974 F.3d 571, 574 (5th Cir. 2020) (quotation omitted). That notice requirement means a § 1983 plaintiff must show that the defendant officer violated "clearly established law." *Id.*

To make that showing in the excessive force context, a plaintiff must "identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (quotation omitted).[2] That is not easy, because clearly

---

[2] A plaintiff might also succeed without a governing precedent on extraordinarily egregious facts where the defendant officer faced a complete absence of exigency. *See*

established law cannot be defined "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Instead, a precedent must "squarely govern[]" the facts of the plaintiff's claim; facts that fall in the "hazy border between excessive and acceptable force" result in qualified immunity. *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam) (quotation omitted).

How clear must fair warning be? "[F]or a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (quotation omitted). The law must be clear enough that, "in the blink of an eye, in the middle of a high-speed chase—*every* reasonable officer would know it immediately." *Morrow*, 917 F.3d at 876 (emphasis added); *see also Reichle v. Howards*, 566 U.S. 658, 664 (2012) (discussing the "every reasonable official" standard); *Harmon v. City of Arlington*, 16 F.4th 1159, 1165–66 (5th Cir. 2021) (same).

Plaintiffs here present several cases that they contend clearly established the law as applied to Hess and Kimpel's specific actions. In part, they rely on seminal Fourth Amendment cases like *Tennessee v. Garner*, 471 U.S. 1 (1985), and *Graham v. Connor*, 490 U.S. 386 (1989). But neither of those cases involved a nighttime confrontation between officers and the occupants of a reportedly-stolen vehicle, much less did they involve suspects who backed their reportedly-stolen vehicle into a police cruiser after refusing numerous commands from police. The Supreme Court has repeatedly made clear that we may not rely on general rule statements in *Garner* and *Graham* to clearly establish the law in far-afield cases like ours. *See Mullenix v. Luna*,

---

*Ducksworth v. Landrum*, 62 F.4th 209, 218 (5th Cir. 2023) (Oldham, J., concurring in part and dissenting in part) (discussing the current state of obvious-case doctrine).

577 U.S. 7, 12–13 (2015) (per curiam); *Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (per curiam).

Plaintiffs also point to several circuit precedents. Even assuming our cases can clearly establish the law, *see Boyd v. McNamara*, 74 F.4th, 662, 669–70 (5th Cir. 2023), the plaintiffs' citations are unavailing. One, *Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012), concerned an alleged tasing and beating of a man not in a vehicle. *Id.* at 759–60. A second, *Edwards v. Oliver*, 31 F.4th 925 (5th Cir. 2022), post-dated the events of this case and so could not have given Hess and Kimpel fair notice of their legal obligations. *See Pearson*, 555 U.S. at 232 (the law must be clearly established "at the time of the defendant's alleged misconduct"). A third, *Baker v. Coburn*, 68 F.4th 240 (5th Cir. 2023), also post-dated the events of this case. In any event, *Baker* did not conclude that an official violated the Fourth Amendment, so it cannot clearly establish law. *See id.* at 251; *Wesby*, 583 U.S. at 64. Moreover, *Baker* involved several fact disputes, including whether shots were fired after a vehicle was, in daylight and in the plain view of every responding officer, traveling away from officers when they fired. *Id.* at 248–49. Here, the facts exhaustively documented by multiple cameras cannot be disputed. Shots were fired in the dead of night as a vehicle traveled towards a location an officer had stood in seconds before. *Baker* therefore cannot "squarely govern[]" today's facts. *Brosseau*, 543 U.S. at 201.

Plaintiffs rely most heavily on *Lytle v. Bexar County*, 560 F.3d 404 (5th Cir. 2019). Like *Baker*, *Lytle* did not find a constitutional violation, and so it did not clearly establish law. *Wesby*, 583 U.S. at 64; *see also Nerio*, 974 F.3d at 575. And *Lytle* featured significant fact disputes that distinguish it from this case. In *Lytle*, the panel resolved those disputes in favor of the plaintiff for the purposes of evaluating summary judgment. *Lytle*, 560 F.3d at 409 ("We therefore adopt Lytle's version of the facts."). What were *Lytle*'s assumed facts? In broad daylight, with no other officers present, and without first

giving a warning, an officer fired at a vehicle "three to four houses down the block." *Id.* This case could hardly be more different because officers gave several warnings, shot their weapons in close quarters, in the predawn darkness, and with officers in the harm's way just seconds before the shots were fired.

For its part, the dissenting opinion correctly recognizes that "*Lytle* itself cannot form the clearly established law in this case." *Post*, at 6 (Dennis, J., dissenting). The dissenting opinion instead points to two out-of-circuit precedents to clearly establish the relevant law. *Post*, at 7–8 (Dennis, J., dissenting). This contention is foreclosed by our precedent, however. In *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002), we recognized that six circuits sanctioning "some version" of the question at issue was insufficient to give officers "fair warning." *Id.* at 330; *see also Vincent v. City of Sulphur*, 805 F.3d 543, 549 (5th Cir. 2015) ("[T]wo out-of-circuit cases and a state-court intermediate appellate decision hardly constitute persuasive authority adequate to qualify as clearly established law sufficient to defeat qualified immunity in this circuit."); *id.* at 550 ("[T]wo cases from other circuits and one from a stayed intermediate court do not, generally speaking, constitute persuasive authority defining the asserted right at the high degree of particularity that is necessary for a rule to be clearly established despite a lack of controlling authority."); *Morrow*, 917 F.3d at 879-80 (holding that two Sixth Circuit cases could not establish a robust consensus and relying in part on *McClendon*).

## III.

The district court's grant of summary judgment to the City of Dallas rested on its alternative holding that, if the law was clearly established, the officers nevertheless committed no constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (requiring a constitutional rights

No. 22-10876

violation for § 1983 claims against a municipality). Because we do not reach the district court's alternative holding, we remand the claims against Dallas to the district court for further consideration. On remand, the district court may reiterate its no rights-violation finding, may reconsider that finding, or may consider any other aspect of the plaintiffs' claims against the City of Dallas.

\*    \*    \*

The grant of summary judgment to the defendant officers is AFFIRMED. The grant of summary judgment to the City of Dallas is REMANDED.

No. 22-10876

James L. Dennis, *Circuit Judge*, concurring in part and dissenting in part:

While I concur in the majority opinion's remand of plaintiffs' claims against the City of Dallas, I dissent from the majority's decision to affirm the district court's entry of summary judgment in favor of the two individual officers. Plaintiffs' Fourth Amendment claims against Hess and Kimpel are based on the officers' use of deadly force against Dawes and Rosales in the absence of any danger to themselves or others. The majority's approval of the district court's misguided judgment extending qualified immunity to Hess and Kimpel is not only incorrect as a matter of law, but also serves to condone the inexcusable incompetence displayed by these two officers— both of whom were suspended or terminated from their positions as police officers for having violated their department's use-of-force policy. I respectfully dissent.

\* \* \*

Taking the evidence in the light most favorable to them, plaintiffs have met their burden of demonstrating that: (1) the officers violated Dawes's and Rosales's constitutional right to be free from unreasonably excessive force; and (2) Dawes's and Rosales' right to be free from such force under these facts was both obvious and clearly established. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019); *Scott v. Harris*, 550 U.S. 372, 378 (2007) ("[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable" to the plaintiff when assessing assertion of qualified immunity at the summary judgment stage) (internal citation omitted). Here, we have the benefit of video footage capturing the incident, which makes clear that the "videotape quite clearly contradicts" the officers' dangerous belief that deadly force—indeed thirteen shots fired—was necessary to stop a boxed-in vehicle from reversing at a crawling speed of under three miles per hour when

10

the officers could have, and in fact did, use a squad car to block Dawes's vehicle—making it impossible for her to flee. *Scott*, 550 U.S. at 378.

First, plaintiffs presented summary judgment evidence that could lead a reasonable jury to conclude that the officers violated Dawes's and Rosales's constitutional rights. To prevail on their Fourth Amendment excessive force claims, plaintiffs must show "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009). It is undisputed that the officers' use of deadly force caused injuries to Dawes and Rosales. The central inquiry is, accordingly, whether the officers exercised force that was unreasonably excessive. The Supreme Court has instructed courts to use the following factors to determine whether an officer used unreasonably excessive force: (1) "the severity of the crime at issue[;]" (2) "whether the suspect poses an immediate threat to the safety of the officers or others[;]" and (3) whether the suspect was "actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The reasonableness of the officers' use of force is assessed under the "totality of the circumstances." *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).

Here, the evidence, when construed in the light most favorable to plaintiffs, may lead a reasonable jury to conclude that the officers' use of force was excessive and unreasonable under the totality of the circumstances. While the severity of plaintiffs' suspected crime of stealing a vehicle—a felony under Texas law—may weigh in favor of the officers, the other two *Graham* factors weigh heavily against a finding that the officers' use of force was reasonable. The video footage, testimony, and expert analysis at the very least demonstrate the existence of genuine disputes of material facts that Dawes posed no immediate danger to officers and was not actively resisting or attempting to flee at the time she was killed. *See, e.g.*, *Flores v. City of*

*Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) ("It is objectively unreasonable to use deadly force 'unless it is necessary to prevent [a suspect's] escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'") (quoting *Garner*, 471 U.S. at 3); *Lytle v. Bexar Cnty.*, 560 F.3d 404, 417-18 (5th Cir. 2009) (it is unreasonable to use deadly force against felony suspect who is fleeing by car if suspect does not pose immediate, substantial threat of harm to officer or others).

For example, far from "refusing" to follow the officers' commands, as the majority finds when it impermissibly puts on its "juror" hat, plaintiffs have presented evidence that they did not hear the officers' commands since they were asleep—it was around three in the morning and the officers only made their commands at a distance. Even if the officers subjectively believed Dawes to be attempting to flee, the video evidence reveals that she was boxed in and would not have been able to escape—especially at the slow speed at which her vehicle was moving. Indeed, plaintiffs presented expert testimony—supported by the video footage—that Dawes was driving at a speed of under three miles per hour when the officers supposedly believed her to be fleeing. Hess testified that Dawes's vehicle was "slowly revving" and that he did not perceive her to be attempting to reverse at a high level of speed. Even if the officers believed Dawes to be making a slow, futile attempt to flee by reversing slowly while boxed-in by other cars, our caselaw is clear that it is unjustified to use deadly force against a fleeing felon who poses no safety risk. *Garner*, 471 U.S. at 11 (use of deadly force to prevent the escape of a felony suspect who poses no immediate threat to the officer or threat to others is unjustified).

The slow speed of Dawes's vehicle also belies the officers' assertion that they believed she posed any safety risk—much less the type of "substantial and immediate" threat required to justify use of deadly force.

*Scott*, 550 U.S. at 386 (use of deadly force justified where suspect poses "a substantial and immediate risk of serious physical injury to others"); *see also Garner*, 471 U.S. at 11 ("Where the suspect poses no immediate threat to the officer . . . the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."). It is undisputed that no one was in the path of Dawes's slow-moving vehicle at the time the officers killed Dawes and injured Rosales; indeed, both officers testified that when they used deadly force they did not observe anyone in danger and did not tell anyone to get out of the way. In his deposition testimony, Hess agreed that Dawes's vehicle was moving at less than three miles per hour when he fired his first round of shots, and that any officer in the path of Dawes's vehicle could have moved out of the way by the time he fired his second round of shots. *Reyes v. Bridgwater*, 362 F. App'x 403, 409 (5th Cir. 2010) ("The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others.").

Even if the officers incorrectly believed other officers to be endangered, their subjective beliefs are wholly irrelevant to the Fourth Amendment inquiry into whether a "reasonable officer on the scene" would have believed that a boxed-in vehicle moving at less than three miles per hour presented an imminent, significant danger to other officers. *Graham,* 490 U.S. at 396–99. Moreover, the City of Dallas found Kimpel's claim that he believed other officers to be in danger untruthful and suspended him for thirty days—calling into question the reliability of the officers' after-the-fact assertion that they shot into the Dawes vehicle thirteen times to protect other officers from a car moving at slow, near walking speed.[1] While the court

---

[1] While the City's finding that the officers violated the police department's use-of-force policy after Dawes's death cannot alone establish a constitutional violation, the City's finding that one of the officers lied in asserting that he believed other officers to be in danger at the time he fired eleven shots at Dawes is certainly relevant to the credibility of the

"must 'be cautious about second-guessing [the] police officer's assessment' of the threat level[,]'" we certainly should not be in the business of accepting implausible ad hoc explanations for an officer's objectively unreasonable use of deadly force. *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021) (quoting *Ryburn v. Huff*, 565 U.S. 469, 477 (2012)). A jury—not judges—should hear the evidence and weigh the credibility of Kimpel's testimony. Here, the video footage, expert testimony, and the officers' admissions could lead a reasonable jury to conclude that the officers violated Dawes's and Rosales's Fourth Amendment rights by using deadly force in the absence of any objective threat to officer safety.

Second, "a body of relevant case law" gave the two officers notice that their unwarranted use of deadly force violated the Constitution. *Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (internal citation omitted). While the majority is certainly correct that "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right," the "focus" of the qualified immunity analysis is whether the officer had "fair notice" that his conduct was unlawful. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks

---

officers' supposed motives for using deadly force. Moreover, the City's finding that the officers acted unreasonably in using deadly force supports plaintiffs' contention that the officers' use of force was not reasonable. *Hope v. Pelzer*, 536 U.S. 730, 741-42 (2002) (considering an Alabama Department of Corrections regulation in determining that conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known") (internal citation omitted); *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1133 (5th Cir. 2014) ("[T]he fact that [the officer] allegedly failed to follow departmental policy makes his actions more questionable, because it is questionable whether it is objectively reasonable to violate such a departmental rule."); *see also Irish v. Fowler*, 979 F.3d 65, 77 (1st Cir. 2020) ("[W]hen an officer disregards police procedure, it bolsters the plaintiff's argument . . . that a reasonable officer in the officer's circumstances would have believed that his conduct violated the Constitution.") (cleaned up).

omitted) (internal citation omitted); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("focus" of qualified immunity analysis is "whether the officer had fair notice that her conduct was unlawful"); *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc) ("The *sine qua non* of the clearly-established inquiry is 'fair warning.'") (citing *Hope*, 536 U.S. at 741). "The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013)).

Here, clearly established law gave the officers ample warning that shooting a felony suspect in the absence of any danger to officers or others violates the Fourth Amendment. As our court noted in *Lytle*, "[i]t has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to [abruptly] use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others." *Lytle*, 560 F.3d at 417-18 (first citing *Kirby v. Duva*, 530 F.3d 475, 483–84 (6th Cir. 2008); and then citing *Garner*, 471 U.S. at 11-12); *see also Garner*, 471 U.S. at 11 ("Where the suspect poses no immediate threat to the officer and no threat to others . . . the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."). While *Lytle* itself cannot form the clearly established law in this case, its rule statement nonetheless reflects "a body of relevant case law"[2] clearly

---

[2] There is no bar on published circuit precedent constituting clearly established law. *See, e.g.*, *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) ("assuming" without deciding "that controlling Circuit precedent clearly establishes law for purposes of § 1983"); *Wilson v. Layne*, 526 U.S. 603, 617 (1999) (plaintiffs must identify "controlling authority in their jurisdiction at the time of the incident which clearly established the rule on which they seek to rely" or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful"). Moreover, the

establishing that the use of deadly force against a suspect fleeing in a motor vehicle who poses no immediate, serious threat to others violates the Fourth Amendment. *Garner*, 471 U.S. 1, 8-9; *Kirby*, 530 F.3d at 483–84; *Vaughan v. Cox*, 343 F.3d 1323, 1333 (11th Cir. 2003); *see also Cooper v. Brown*, 844 F.3d 517, 525 n.8 (5th Cir. 2016) (where a case "does not constitute clearly established law for purposes of QI," it may still "aptly illustrate[] the established right").

In *Kirby v. Duva*, for example, the Sixth Circuit found the decedent's Fourth Amendment rights clearly established where officers fired thirteen rounds at a suspect that they said they believed to be fleeing despite the slow speed at which he had been reversing his car at the time he was killed by police. 530 F.3d at 483–84. Despite the significant differences in the narratives provided by plaintiffs and defendants, on summary judgment, the Sixth Circuit properly credited plaintiffs' version of events to find that it was clear enough to the officers that their use of deadly force during a roadside execution of a search warrant was unconstitutional where (1) it was unclear the suspect heard the officers' orders to exit the car; (2) the suspect's vehicle was sandwiched on the side of the road and reversed in an apparent attempt to pull out of the parallel parking position; (3) the vehicle was "not going very fast" (seven to eight miles per hour) at the time it allegedly reversed towards an officer; (4) and "none of the officers was ever in harm's way." *Id.* at 479, 484. Here, similarly, it was unclear that Dawes and Rosales heard the officers' commands delivered at a distance in the middle of the night, Dawes's vehicle was sandwiched between a patrol car, other vehicles, and a

---

Fifth Circuit en banc court has said that clearly established law may be based on "controlling authority—or a 'robust consensus of persuasive authority.'" *Morgan*, 659 F.3d at 371–72 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011)); *see also In re Hidalgo Cnty. Emergency Serv. Found.*, 962 F.3d 838, 841 (5th Cir. 2020) ("[A] panel of this court is bound by circuit precedent.").

fence such that she could not flee, the vehicle was moving at under three miles per hour at the time the officers shot at her, and no officer was ever in harm's way.

In *Vaughan v. Cox*, similarly, the Eleventh Circuit found that it was objectively unreasonable for an officer to use deadly force to apprehend the occupant of an allegedly stolen vehicle fleeing at 85 miles per hour on a highway with a speed limit of 70 miles per hour. 343 F.3d at 1326, 1330. In "[a]pplying *Garner* in a common-sense way" to the facts of the case, the Eleventh Circuit determined that a reasonable officer could have known that the use of deadly force was unreasonable where: (1) the suspect did not present a "an immediate threat" to officers or bystanders by driving more than ten miles over the speed limit; (2) the suspect had made no menacing gestures at the officers or others besides accelerating; (3) a prior collision between the suspect's car and the officer's vehicle was accidental; and (4) the suspect's vehicle was "easily identifiable and could have been tracked" and apprehended without the use of deadly force. *Id.* at 1330-31, 1333. Here, similarly, Dawes did not pose any "immediate" threat to officers, had made no "aggressive moves" besides attempting to back out of the parking spot at a snail's pace, accidentally bumped into the squad car positioned at an angle close behind her vehicle, and could have easily been apprehended without the use of deadly force since her vehicle was boxed-in by the squad car.

In light of *Kirby* and *Vaughan*'s guidance in interpreting *Garner*, it was clearly established on the date of Dawes's death that "police officers may not fire at non-dangerous fleeing felons" where, as here, there are genuine disputes of material fact as to whether the suspect heard the officers' prior commands, the at-issue vehicle was boxed-in such that the suspect could not flee, the vehicle was not moving fast enough to objectively present any immediate danger to officers, Dawes made no menacing gestures at the

officers besides accelerating her car to a speed of approximately three miles per hour, and any prior collision between the suspect's vehicle and a police vehicle was accidental. *Garner*, 471 U.S. at 11 (in the absence of an "immediate" threat to officer or bystander safety the "use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable"); *Kirby*, 530 F.3d at 483 ("*Garner* made plain that deadly force cannot be used against an escaping suspect who does not pose an immediate danger to anyone."); *Vaughan*, 343 F.3d at 1330 ("[A] reasonable jury could find that [the suspects'] escape did not present an immediate threat of serious harm to [the police officer] or others on the road."); *Wilson*, 526 U.S. at 617 (explaining that clearly established law may consist of "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful").

Moreover, the officers' grotesque, unwarranted killing of Dawes presents such an egregious case of unreasonable use of deadly force so as to excuse plaintiffs' need to identify prior case law. In "an obvious case" like this one,[3] the *Graham* excessive-force factors themselves can clearly establish

---

[3] The majority opinion posits the obvious case exception as requiring both "extraordinarily egregious facts" and "a complete absence of exigency." Maj. Op. at 6 n.2 (citing *Ducksworth v. Landrum*, 62 F.4th 209, 218 (5th Cir. 2023) (Oldham, J., concurring in part and dissenting in part)). This is incorrect. In *Taylor v. Riojas*, the Supreme Court certainly noted the absence of "necessity or exigency" in determining that "any reasonable officer should have realized" that the conditions of confinement in that case were unconstitutional, yet nowhere did it purport to make a lack of necessity or exigency a requirement under the obvious case doctrine. 592 U.S. 7, 9 (2020). In any event, there was no exigency here justifying the use of deadly force against Dawes given that there was no "imminent risk of death or serious injury" or that "a suspect [would] escape." *Kentucky v. King*, 563 U.S. 452, 473 (2011) (Ginsburg, J., dissenting) ("Circumstances qualify as 'exigent' when there is an imminent risk of death or serious injury, or danger that evidence will be immediately destroyed, or that a suspect will escape . . . the exception should govern only in genuine emergency situations.") (citing *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).

the right at issue without a body of relevant case law. *Cooper*, 844 F.3d at 524 ("*Graham* excessive-force factors themselves can clearly establish the answer, even without a body of relevant case law.") (internal citation omitted); *see also White v. Pauly*, 580 U.S. 73, 79 (2017) ("Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers, but in the light of pre-existing law the unlawfulness must be apparent.") (internal citation omitted). As discussed above, a jury could conclude that no reasonable officer could have believed Dawes was resisting arrest or posed a safety threat by reversing her car at under three miles per hours. Therefore, viewing the facts in the light most favorable to Dawes, the defendant officers acted objectively unreasonable in light of clearly established law in shooting at an occupied vehicle thirteen times in the absence of any threat to officer safety.

In light of the use of deadly force deemed unreasonable by the Supreme Court in *Garner* and elaborated on by circuit courts, the defendant officers had "fair notice" that using deadly force against Dawes where no reasonable officer could conclude that she posed any immediate safety threat to anyone would violate her Fourth Amendment right to be free from unreasonably excessive force. *Garner*, 471 U.S. 1, 8-9; *Kirby*, 530 F.3d at 483–84; *Vaughan*, 343 F.3d at 1333; *see also Brosseau*, 543 U.S. at 198 ("focus" of qualified immunity analysis is "whether the officer had fair notice that her conduct was unlawful"); *Hope*, 536 U.S. at 731 ("Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful."). In light of clearly established law, as announced in *Garner* and elucidated in *Kirby* and *Vaughn*, it is "beyond debate" that the officers' use of deadly force against Dawes was unconstitutional. *Ashcroft*, 563 U.S. at 741. Moreover, the unconstitutionality of the officers' use of deadly force against Dawes was plainly obvious under the factors laid out in *Graham*. 490 U.S. at 396. The panel should reverse and

No. 22-10876

remand the district court's grant of qualified immunity in favor of the defendant officers. I respectfully, but emphatically, dissent.